IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BOBBY GARRISON, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:05-cv-549-A |
| | ) | |
| MONTGOMERY COUNTY BOARD OF | ) | |
| EDUCATION, ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

---

PLAINTIFF'S MEMORANDUM BRIEF IN OPPOSITION
OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

ATTTORNEY FOR PLAINTIFF

JURALDINE BATTLE-HODGE

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Bobby Garrison in the above styled cause and moves this Honorable Court to deny Defendants' Motion for Summary Judgment. As grounds therefore, the Plaintiff avers that there is a genuine issue of material fact to be submitted to a jury of Plaintiff's peers, and the Defendants are not due summary judgment as a matter of law, as to any claims made by the Plaintiff. In support of his response, Plaintiff relies on the applicable law, pleadings, depositions and affidavits attached hereto and for their complaint against Defendants and their agents and representatives (Defendants) hereby complains as set forth herein below.

**WHEREFORE, THE PREMISIES CONSIDERED,** Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion for Summary Judgment, and allow this cause to move forward and be heard by a jury of Plaintiff's peers.

## I. SUMMARY OF THE CASE

**Nature of the Case**

This action was filed by Bobby Garrison against the Montgomery County Board of Education, Carlinda Purcell, Jimmy Barker, Jacky Todd, Mike Strength and Mark Casillas in their individual and official capacities in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. Section 1983. Additionally, Plaintiff brings state claims for wantonness. (See Exhibit "A" – Complaint, p 1 and par. 13).

## Course of Proceedings

This case was timely filed in the United States District Court for the Middle District of Alabama, Northern Division on January 7, 2005. (Complaint, p. 1). Defendants filed their answer on June 6, 2005. (See Exhibit "B" - Answer, p. 1). Defendants filed a motion for summary judgment on December 14, 2005. (See Exhibit "C" - Defendants' Memorandum Brief in Support of Motion for Summary Judgment).

## II. PLAINTIFF'S SUMMARY OF UNDISPUTED FACTS

Plaintiff first began working for Defendants on a full time basis on April 15, 2002, as a General Laborer I (See Employment Notice – Exhibit "D"). He was employed in this same position until on or about July 12, 2004. (Complaint, par. 24). Plaintiff is a black male (Complaint, par. 3). At all times material hereto, Plaintiff was a non-tenured employee. The Defendants are the Montgomery County Board of Education (Board), Carlinda Purcell (Purcell), Jimmy Barker (Barker), Mark Casillas (Casillas), Jacky Todd (Todd) and Mike Strength (Strength). (Complaint, par. 4-9).

The Board is the legal entity and body corporate and politically organized under the laws of the State of Alabama to operate public schools within Montgomery County, Alabama. Purcell is currently the superintendent of schools for the Montgomery County Public School System. Barker is an assistant superintendent of schools for the Montgomery County Public School System. Todd is the director of Logistics for the Montgomery County Board of Education. Strength was the Warehouse Manager at all times during Plaintiff's tenure. (See

Exhibit "E" - Deposition of Michael Ray Strength, p. 9, lines 4 -8). Casillas is the director of support personnel. (Complaint, par. 9).

The above concludes the undisputed facts in this matter and all other facts outlined by the Defendants as disputed as set out below.

### Plaintiff was assigned to degrading and demoralizing tasks based on his race

Though one of the duties and responsibilities listed in the Laborer I job description is "any other duties within operations as directed," this should not have subjected Plaintiff to a particular detail based on his race. In fact, the Defendants took this opportunity to discriminate against Plaintiff. Whites were not required to perform such tasks.

For example, Plaintiff was made to cut grass with a push lawn mower. Mike Strength admits in his deposition that there was a grass crew. (Strength Depo. at p. 14, lines 16-19). After this admission, Strength is careful to add that the grass crew did not mow for the Logististic Department. (Strength depo. at p. 14, line 21). However, Plaintiff asserts that the grass crew did cut grass for Logistics, as well as other areas. (See Exhibit "F" – Excerpts from Deposition of Bobby Garrison, p. 77, lines 18-23 and Exhibit "G" – Affidavit of Garrison). No whites were made to cut grass, in particular, Ronnie Causey, white/male was not required to mow grass as Plaintiff was. (Aff. of Plaintiff, par. 7 and 11).

Ronnie Causey who was similar situated to Plaintiff, was allowed to harass Plaintiff. As Causey and Plaintiff were going to the truck, Causey stated, "I am your boss and everything I tell you to do you have to do." Plaintiff

disagreed. When Causey and Plaintiff returned to Logistics, Plaintiff was told to report immediately to Jacky Todd's office. As Plaintiff entered the office, there assembled to Plaintiff's surprise, were Jacky Todd, Mike Strength, Joe Allen, Lewis Garner and Ronnie Causey. They were already in the office and sitting when Plaintiff entered. Plaintiff was at a loss for words and feared losing his job. Plaintiff was told in so many words, "to stay in his place." When Plaintiff left the meeting, Plaintiff called his AEA representative and reported the incident to him. Plaintiff later wrote a letter to Jacky Todd expressing his concern about the way he was treated in his office and how the matter was handled. As a result of this incident, Plaintiff became ill and was forced to go to the doctor. Plaintiff suffers from high blood pressure. Plaintiff's stress levels were up for fear of losing his job and the encounter he experienced in Mr. Todd's office. (Complaint, par. 16). Ronnie Causey was not Plaintiff's boss. Notwithstanding Strengths' statement in his deposition, a laborer II does not have supervisory rights over a Laborer I. Plaintiff represents that this is not the practice that is followed at Logistics. (Strength Depo. at p. 16, lines 1-15 and Garrison Aff., par. 9).

Another demoralizing incident involved Mike Strength assigning Plaintiff and another black worker to go to Daisy Lawrence to clean out some computers. When Plaintiff and the other black employee got there, raw sewage was ankle deep. (Complaint, par. 17, Garrison Depo at p. 78, lines 1-18). Once again, Ronnie Causey, white/male was not required to complete this task. When deposed, Strength could not recall whether Causey was assigned to the Daisy Lawrence and Plaintiff avers that Causey was not assigned to Daisy Lawrence.

5

(Strength Depo. at p. 18, lines 10 – 12, and Aff. of Garrison at par. 8). When Plaintiff reported the conditions in which they had to work, Strength stated that he did not care, he wanted the computers cleaned out. Plaintiff and the worker had to work for two weeks in the most humiliating conditions removing those computers. (Complaint, par. 17). Even though Plaintiff was supplied with boots, gloves and a jumpsuit, it is doubtful that any employee would be allowed to work in such horrific conditions.

### Racial slurs were used and tolerated by Defendants

Plaintiff is aware of at least two racial slurs made by Defendant Strength. Defendant Mike Strength often made racial slurs. On one occasion, Strength was involved in a conversation with another white co-worker. When he referred to a black as a "monkey." Strength admits that he used such words. (Strength, depo. at p. 23, lines 17-23 and p. 24, lines 1-3). Defendants contend that comments that may be of a teasing nature do not necessarily translate into discrimination, but such comments can go to bolster Plaintiff's contention that he was treated differently from his white counterpart based on race. Defendant Strength also referred to black employees as "you all." Though "you all" may seem week as a racial slur, the context with which Strength made this statement was highly racially motivated. Defendant Strength's racial biasness was evident in the way he treated Plaintiff as opposed to Mike Strength.

### Plaintiff was passed over for promotion.

On or about November 2003, a Laborer III position became available. Plaintiff applied for the Laborer III position. Plaintiff arrived at work one morning

in November and Plaintiff was ushered into Mr. Todd's office for an interview. (Complaint, par. 20).

Plaintiff was shocked at the manner in which the interview was held. The only reason Plaintiff can fathom that Defendants did not afford him a far opportunity to interview for the job was due to his race. Plaintiff later learned through board minutes dated November 11, 2003, that Causey was being transferred to Laborer II, beginning October 14, 2003. Plaintiff felt this was unfair and he was not given equitable treatment. (Complaint, par. 20).

The Defendants contend that they hired Causey because he was more experienced as he was hired to work with the "science kits." However, Causey was not hired to work with the science kids. He was assigned to pick up the science kids. Which is different than being hired to work with the kits. Like the Plaintiff, Causey was to assign to help in any area. Because he picked up science kits, this did not give him any experience in the job. Only a Laborer III is hired to work with science kits. (Garrison Depo. at p. 62, lines 19-23 and p. 63, lines 1-10).

**Plaintiff reported the discriminatory treatment to the Board**

Plaintiff reported the incident to the Board. (See Exhibit "H" – Plaintiff's letter dated December 1, 2003). Plaintiff expressed his concerns to Barker about the demoralizing and inappropriate treatment of Black employees at Logistics and the fact that he had been passed over for promotion. On or about December 1, 2003, Plaintiff wrote a letter to the Montgomery County Board of Education to lodge a formal complaint against Mike Strength, Jacky Todd and the Montgomery

Public Schools regarding their hiring practices, racial discrimination and unfair demoralizing treatment of blacks in the Logistics Department. (Complaint, par 21).

On or about December 17, 2003, Jerry Morris and Plaintiff made an appointment to meet Jimmy Barker at the Board of Education to seek resolution to the Plaintiff's concerns. Mr. Barker listened to what Plaintiff had to say about the degrading and demoralizing conditions at Logistics. Barker assured Plaintiff that he would look into things and would be present at his next interview. (Complaint, par. 22).

On January 20, 2004, Plaintiff again met with Barker to discuss his concerns and Plaintiff mentioned how Causey was hired at a higher grade and was afforded promotion when he was not. (Complaint, par. 23).

### III. ARGUMENTS AND AUTHORITIES

#### A. Standard of Review for Summary Judgment

In Alabama, "the principals of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to judgment as a matter of law," *Kimbrell v. Froctas, Inc.*, 2002 WL 31041847 (Ala.Civ.App). The Alabama Supreme Court has stated that, "when a movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to produce substantial evidence creating such an issue." *Bass v. Southtrust Bank of Baldwin County*, 538 So.2d 794, 787-798 (Ala. 1998). Substantial evidence is considered to be "evidence of

such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *West v. Founders Life Assurance Co. of Florida*, 547 So.2d 870, 971 (Ala. 1989). In reviewing a motion for summary judgment, the Court must "review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." *Kimbrell v. Focras, Inc.*, 2002 WL 31041847 (Ala.Civ.App.).

Where there are questions as to whether the alleged conduct complained of exits, a summary judgment is not appropriate. As per the applicable legal standard for summary judgment, the Plaintiff has presented substantial evidence that a fair-minded person would infer the existence of the fact sought to be proved. Because of the applicable law, pleadings, depositions and affidavits attached hereto the Defendants have not met the standard of review such that summary judgment is proper.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discrimination against an individual such as Plaintiff, as it relates to compensation, terms, conditions or privileges of employment, based on race, color, religion, sex, or national origin. *42 U.S.C.S. Section 2000e-2(a) (1)*. Where there are questions as to whether the alleged conduct of discrimination is in violation of Title VII of the Civil Rights Act of 1964, to establish a prima facie claim of racial discrimination, the following elements must be met: (1) Plaintiff is a member of the protected group; (2) that he was subjected to an adverse employment action; (3) that the Plaintiff was treated less favorably than the

similarly situated employees who are not members of the minority class; and (4) that the Plaintiff was otherwise qualified for the position.

Once the Plaintiff has met this burden, then the defendant must show that there is a legitimate nondiscriminatory reason for the adverse employment action. Should the Defendant meet its burden of production, the presumption is eliminated, and the Plaintiff must then show that the reason given by the Defendant for its action is pretextual, and the actual reason for the adverse action is discrimination. *Howard v. EP Oil Co.*, 32 F. 3d 520, 525 (11th Cir. 1994). The Court in *Howard* reasoned that to survive summary judgment, Plaintiff need only prove that a genuine issue exists as to whether the reason for the decision was discrimination. *Howard supra*.

**Official Capacity Claim**

**1. Individual Capacity Claims**

### B. Administrative Remedies and Timeliness of Acts

**Claims Were Timely Filed**

Based on the fact that the refusal of the Defendants to promote the Plaintiff was continuining pattern of the discrimination that Plaintiff was subjected. The final act occurred July 12, 2004, which was much within the 180 day statute of limitations. Due to the continuing nature of the harassment, Plaintiff had a right to bring a claim for promotion denial. Since these actions by the Defendants were a continuing violation, Plaintiff is allowed to bring all of his complaints in if at least one of his claims falls within the applicable 180 day window. The last action of termination occurred July 12, 2004; this charge of

discrimination was timely amended on November 18, 2004, well within 180 days. (See Charge of Discrimination – Exhibit "I").  Therefore the nonpromotion charge is timely filed.

### C. Merits of Hostile Work Environment

### Plaintiff's unlawful termination was casually related to Defendants' creation of a hostile work environment

In order to establish a hostile work environment claim the Plaintiff must show that (1) He belongs to a protected group; (2)he has been subjected to unwelcome harassment; (3) the harassment was sufficiently or pervasive to alter the terms and conditions of employment and create such a discriminatory abusive working environment, (4) and the employer was responsible for such environment under the theory of vicarious or direct liability. *Williams v. Alabama Pub. Health Dept,* 2005 U.S. App. LEXIS 27285. Plaintiff has met the burden of protected group, as Plaintiff is black, thus, the first element is met.

### Plaintiff was subjected to unwelcome harassment based on race

Plaintiff was subjected to unwelcome harassment based on his race. Plaintiff was made to perform many tasks throughout his tenure because of his race.  He was made to do many degrading and demoralizing things because of his race.  First, Plaintiff was made to mow grass with a push lawn mower in the middle of the day when the Defendants had a grass mowing crew, Plaintiff was subjected to racial slurs by Defendant Strength, he was made to work in unthinkable unsanitary conditions at Daisy Lawrence and he was passed over for promotion due to his race.  Plaintiff was finally terminated on July 12, 2004.These among many other instances were unwelcome harassment based on his race.

11

Through all of the beforemntioned instances of harassment, Plaintiff has satisfied the second element.

<u>Defendant's Harassment was Severe or Pervasive</u>

An employee's work environment is sufficiently severe or pervasive when the Plaintiff shows that the frequency and severity of the actions of the Defendants are such that they unreasonably interfere with an employee's work environment. Further, the work environment was humiliating and embarrassing. There were a great number of such episodes that made Plaintiff's work environment sufficiently hostile. Included in these are: (1) August 5, 2003, Plaintiff was made to fear for his job when he was threatened by Ronnie Causey with relation to having to follow his instructions and when his supervisors ushered him into a meeting where he was verbally berated and all but told to, "stay in his place." (2) Mike Strength assigned Plaintiff to Daisy Lawrence where the conditions were a health hazard. (3) Plaintiff was made to cut grass with a push lawn mower when there was a grass crew. (3) Plaintiff was denied a promotion in November 2003. (4) Plaintiff was terminated on July 12, 2004.

<u>The Board had actual and constructive notice, thus adequate notice was given to warrant liability</u>

The Board has a policy that discriminatory or other wrongful acts should be reported to the Board. Plaintiff reported such incidents to the Board on at least three occasions. On or about December 1, 2003, Plaintiff wrote a letter to the Montgomery County Board of Education to lodge a formal complaint against Mike Strength, Jacky Todd and the Montgomery Public Schools regarding their hiring

practices, racial discrimination and unfair demoralizing treatment of blacks in the Logistics Department.

On or about December 17, 2003, Jerry Morris and Plaintiff made an appointment to meet Jimmy Barker at the Board of Education to seek resolution to the Plaintiff's concerns.

Then on January 20, 2004, Plaintiff again met with Barker to discuss his concerns and Plaintiff mentioned how Causey was hired at a higher grade and how Defendant continually discriminated against Plaintiff.

### D. Denial of Promotion

**Plaintiff has successfully made a claim for failure to Promote**

In the case before this Honorable Court, Plaintiff must show that he belonged to a protected group; applied for and was qualified for job, despite qualifications was rejected and filled the position with a person not in the protected group. Plaintiff is a member of the protected group, as he is black. Plaintiff applied for the Laborer III position in November 2003.

Plaintiff was qualified for the position due to vast background and he had worked in a supervisory position for over 20 years with a successful track record working in a demanding, fast-paced environment requiring stamina, patience, time management skills and proven ability to work effectively with people and indepently. Plaintiff also surpassed the educational requirement. Plaintiff had more supervisory experience that Ronnie Causey. Yet, Ronnie Causey was selected for this position. Causey is not a member of the protected group.

Plaintiff was treated less favorably when he was denied for promotion. This is the case when he was passed over for promotion in favor of Causey. The Defendants offered what it has labeled as business reasons for not promoting Plaintiff. However, the reasons given to Plaintiff were pretextual. In particular, he Defendants reported to the Plaintiff that the reason they promoted Causey was due to his Science Kit experience. Causey was not hired to work with the science kits, as only Laborer III's are actually hired to work with Science Kits. Plaintiff being passed over, because Causey was more qualified fails as a legitimate business reason.

Given all of the background and facts that the Plaintiff has rebutted the Defendants reason for not promoting Plaintiff, the Plaintiff clearly shows that there is a genuine issue of material fact and as such, summary judgment would not be appropriate.

### 5. Non-Renewal

Plaintiff was terminated from the position of Laborer I. Defendant did not give Plaintiff a real reason for his termination. When Defendant Strength was asked why Plaintiff was terminated he could not articulate a real reason. In his deposition, he stated that Plaintiff "would walk off and start talking to other people. You sent him to a school with someone else and he was supposed to be working for them and they had a job to do at school and he would disappear. Yet Mr. Strength states that as far as he is aware, Plaintiff has never been written up.

Based on the beforementioned facts, Defendant's position that they terminated Plaintiff for failing to o his job is without merit and as such, Defendant is not due Summary Judgment as to this issue.

### D. Section 1983

To maintain a 42 U.S.C.S. Sec. 1983 claim based upon a constitutional violation, "the plaintiffs must allege (1) that the defendants acted "under color of law" and violated constitutionally protected rights.  Section 1983 prohibits defendants acting under color of law from depriving any person of any rights, privileges, or immunities secured by the United States Constitution or federal law." *John Does 1, 2, 3 and 4 v. The Covington County Board, et al.*, 884 F. Supp. 462, 465.

When Defendant failed to promote Plaintiff and when Plaintiff was terminated in violation of his constitutional rights, the Defendants were acting under the color of law.  As has been established, the Defendants failure to promote Plaintiff as well as their termination of Plaintiff was based on his race, which is clearly in violation of his constitutional rights.  At all times material hereto, the Defendants were acting under color of law.

### Doctrine of Qualified Immunity

In evaluating a claim of qualified immunity one must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.

Plaintiff has shown that he was deprived of an actual constitutional right in at least two instances: (1) Title VII Violation and (2) 42 U.S.C.S. Sec. 1983. At the time of each and every violation, plaintiff's Constitutional Rights were established. This is true beginning with the demoralizing and degrading activities Plaintiff was subjected to, to failing to promote Plaintiff to finally terminating him.

### E. Plaintiff Has Established a Prima Facie Case For Race Discrimination

As previously discussed where there are questions as to whether the alleged conduct of discrimination in violation of Title VII of the Civil Rights Act of 1964, to establish a prima facie claim of racial discrimination, the following elements must be met: (1) Plaintiff belongs to a racial minority; (2) that he was subjected to an adverse employment action; (3) that Plaintiff was treated less favorably than similarly situated employees who are not members of this minority class; (4) and that Plaintiff was otherwise qualified for the position. A Supreme Court case discussing the burdens placed on the employee in employment discrimination case is *St. Mary's Honor Center v. Hicks.* In that case the court reasoned that the Plaintiff has to demonstrate a prima facie case that raises the presumption of discrimination. Further, the court reasoned that the prima facie case consists of the elements enunciated in the case of *McDonnell Douglas*, i.e., 1) plaintiff is a minority, 2) plaintiff was qualified for the position, 3) plaintiff was subject to an adverse employment decision, and 4) defendant replaced plaintiff with a non-minority. *St. Mary's Honor Center v. Hicks*, 125 L. Ed. 2d 407, 113 S. St. 2742 (1993). Once the plaintiff has demonstrated a prima facie case, the burden is then placed on the defendant, and the defendant is required to rebut

the presumption by providing a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant does so, the Plaintiff is required to show that the reason given by the defendant for the action taken is pretextual, and that the actual reason is that of discrimination.

As to this Plaintiff's allegations, and as previously discussed, Plaintiff is a minority; and he was qualified for the promotion received by Ronnie Causey. Plaintiff was similarly situated to Causey; The reasons offered by the defendants for their actions as discussed above are of such a nature that a genuine question exists as to whether or not the reasons given by the defendants for their actions was intentional discrimination. As such, Plaintiff has presented a prima facie case for this matter to be submitted for consideration by a jury of his peers.

### F. State Claims

### Elements of Wantonness

**a. Plaintiff has made a prima facie case for wantonness**

Wantonness is "conscious doing of some act or the omission of the duty with knowledge of existing condition and consciousness that, from the act or omission, injury will likely result in injury to another. *Mack v. Garrison*, 51 Ala. App. 453, 286 So. 2d 857, 860. The manner in which Plaintiff has been treated is wanton. Through the numerous reports to the Board and Plaintiff's supervisor on how he was being mistreated, the Defendants were definitely conscious of the mistreatment Plaintiff was a victim of and failed to remedy to condition the condition to prevent injury to the Plaintiff. The Defendants are held to know that injury was likely to result as a result of their non-action.

Since the Plaintiff has made a prima facie case for wantonness as this Honorable Court has jurisdiction over Plaintiff's Federal claims, this Court has pendent jurisdiction

## **CONCLUSION**

The evidence presented by Plaintiff as to the demoralizing and degrading activities that he was subjected to, the non-promotion and the ultimate terminations such that Plaintiff is timely when she filed his EEOC complaint based on a continuing violation. The last adverse employment action was clearly filed within the 180 days provided. The question of legitimacy of Defendants to promote the Plaintiff is certainly at issue, and is a question that should be decided by a jury of Plaintiff's peers. As such Plaintiff contends that he was wrongfully denied the promotions he sought. Plaintiff also contends that he was wrongfully terminated.

Based on the facts, caselaw and evidence that is in direct dispute to Defendants' claims; there is a genuine issue of material fact to be submitted to the jury. Where there are questions, the case must go to trier of fact.

**WHEREFORE PREMISIES** considered, Plaintiff request that this Honorable Court deny Defendants' request for summary judgment.

Respectfully submitted this the 5th day of January 2006.

_____
JURALDINE BATTLE-HODGE (BAT033
Attorney for Plaintiff

LAW OFFICES OF JURALDINE BATTLE-HODGE
207 Montgomery Street, Suite 215
Montgomery, Alabama 36104
Telephone: (334) 262-1177, 263-5575
Facsimile: (334) 263-5569

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January 2006, the foregoing document was served upon the following counsels of record by placing a copy of the same in the U.S. Mail, First Class postage prepaid, addressed as follows:

Elizabeth Brannen Carter
Jayne Leslie Harrell
James R. Seale
Hill, Hill, Carter, Franco, Cole & Black, P.C.
Post Office Box 116
Montgomery, Alabama 36101-0116

_____
OF COUNSEL

19