**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| BOBBY GARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:05cv549-WHA |
| | ) | (WO) |
| | ) | |
| MONTGOMERY COUNTY BOARD | ) | |
| OF EDUCATION, CARLINDA | ) | |
| PURCELL, JIMMY BARKER, JACKY | ) | |
| TODD, MARK CASILLAS AND | ) | |
| MIKE STRENGTH, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc #11) filed by the

Montgomery County Board of Education, Carlina Purcell, who is sued in her official capacity

only; and Jimmy Barker, Jacky Todd, Mark Casillias, and Mike Strength, who are sued in their

official and individual capacities, (collectively "Defendants") on December 14, 2005.

The Complaint in this case was filed on June 7, 2005, by Plaintiff Bobby Garrison

("Garrison").  In his Complaint, Garrison brings claims under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991 (Count One) and

42 U.S.C. § 1983 (Count Two), for discrimination on the basis of race, and a state law claim of

"wantonness," (Count Three).

For the reasons to be discussed, the Motion for Summary Judgment is due to be

GRANTED on all counts.

## II.  <u>SUMMARY JUDGMENT STANDARD</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).[1]

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  <u>Id.</u> at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Id.</u> at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of

---

[1] Garrison has relied on Alabama case law in support of his characterization of the standard applicable to a motion for summary judgment.  The court will, however, apply the Federal Rules of Civil Procedure.

the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  See

Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).  After the nonmoving party has

responded to the motion for summary judgment, the court must grant summary judgment if there

is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in

any other case.  Chapman v. AI Transport, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most

favorable to the non-movant:[2]

**A. Background**

The Montgomery County Board of Education ("MCBOE") oversees the operation and

administration of the public schools within Montgomery County, Alabama.  In March, 2002,

Garrison applied for and was hired by the MCBOE as an unskilled laborer.  His job was

classified as Laborer I and he was assigned to work in the department of logistics and services.

The job description for a Laborer I calls for an employee who is willing to become a figurative

"jack of all trades."  Potential duties include: the operation of a variety of grounds keeping

equipment, including walking and riding mowers; the transportation, loading and unloading of

---

[2] Garrison has cited to his Complaint in support of some of his factual statements. Opposing summary judgment "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324.  Therefore, the court has only considered facts supported by citation to evidentiary submissions.

equipment; helping to maintain the warehouse and working area; and "any other duties within operations as directed."  See Position Announcement for Laborer I, Def Ex. 6.  As a new employee, Garrison was placed on a probationary status for three years from the date of his hiring.

The named individual defendants in this suit all worked for the MCBOE in one capacity or another.  Carlinda Purcell ("Purcell") has been Superintendent of MCBOE since December 2004.  At all times during Plaintiff's employment, Jimmy Barker served as Assistant Superintendent of Human Resources and Mark Casillas served as a Support Personnel Specialist for the MCBOE.  Jacky Todd  became Director of the Logistics Department on July 28, 2003 when he replaced Donald Dotson who had served as Director from October 1999 to July 2003. Finally, Mike Strength was a supervisor in the logistics department while Plaintiff was employed there.

**B.  The Termination of Plaintiff's Employment**

Plaintiff worked as a Laborer I for the MCBOE, until his employment was terminated. Jacky Todd recommended that Plaintiff's employment end, and the then Superintendent Clinton Carter endorsed that recommendation and passed it on to the Board.  The Board accepted the recommendation and Garrison was notified by mail on June 25, 2004, that his employment had been terminated effective July 12, 2004.[3]  Garrison claims that he was never given a reason for the termination and that it was motivated by racial discrimination.  Defendants contend that Garrison was terminated because of poor work performance and an inability to get along with his

---

[3]  Garrison worked for MCBOE for a total of two years and four months.

co-workers.  Defendants also contend  that they were under no obligation to inform Plaintiff of the reason for severing the employment relationship.

On June 29, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff amended his charge on November, 18 2004.[4]  On March 7, 2005, the EEOC sent Plaintiff a "right to sue" letter.  Plaintiff satisfied the requirement to initiate this suit within ninety days of his receipt of that "right to sue" letter.  42 U.S.C. § 2000e-5(f)(1).

## C.  Plaintiff's Complaints Relating to His Treatment Prior to his Termination

Besides the termination, Garrison also lays out several additional complaints in this lawsuit which have to do with the way in which he claims to have been treated during his time working for the MCBOE.

### 1.  Failure to Promote to Laborer III

In November 2003, Plaintiff applied for the position of Laborer III, which would have meant greater pay and responsibility.  Specifically, the job involved working with the county's science kits.  A search committee made up of Jacky Todd,  Mike Strength, and Betty Smith (secretary in the Logistics Department) was formed to interview applicants for the position.   The committee interviewed three candidates by asking predetermined questions.  The job was given to Ronnie Causey, a white employee.  Plaintiff believes that he did not get the promotion

---

[4] Garrison has not provided a copy of the charge filed on June 29, 2004 and does not know what the difference is between the original charge and the amended charge.  In his amended charge, a copy of which has been provided to the court, Garrison alleges both racial discrimination and retaliation, but he does not allege retaliation in his Complaint or his Brief in opposition to Defendant's Motion for Summary Judgment.  Because retaliation was not allege in Garrison's Complaint, it is not considered.

because he is black.  He claims the search process was unfair and racially discriminatory because

he was not given sufficient time to prepare for his interview, and because he was more qualified

for the position than the white applicant selected, Ronnie Causey.

### 3.  Degrading Treatment and Demoralizing Tasks

Garrison alleges that during his time at MCBOE, he was subjected to racial harassment,

and that because he is black, he was required to complete tasks that he characterizes as degrading

and demoralizing.  Among the tasks that Garrison found degrading and demoralizing were:

cutting grass, washing government cars, and picking up trash around the warehouse.  Garrison

believes that such tasks were not within his job scope, and that white workers in the department

were not assigned such menial tasks.  He also complains that on one occasion he and a black co-

worker were told to remove computers from the basement of an elementary school that had a

ruptured sewage pipe.  To get the computers out of the basement he had to walk through ankle

deep, raw sewage.  Garrison alleges that such an unsanitary work environment is degrading and

that he was selected for such an unenviable assignment because he is black.

Garrison also complains that he was subjected to racial slurs.  Specifically, he says that

his supervisor Mike Strength referred to a black employee as a "monkey."  Garrison also claims

that Strength made a racial slur when, in referring to a fire extinguisher mishap, he said, "all of

you all was standing out here and didn't see nobody skeet the foam out of the fire hose?"  Pl.'s

Dep. at 76.  Plaintiff believes the phrase "you all" is a racial slur because, when Strength made

the statement, there were only black workers around.  In addition to Strength's comments,

Garrison claims that another white employee named Lewis used to call a black employee an

alcoholic or a drunkard, which Garrison took to be racially derogatory.

6

Besides the racial slurs, Garrison alleges that Strength discriminated against him in other ways. For instance, Garrison claims that during a meeting Strength leaned back in a chair and propped his feet up inches away from Plaintiff's face. Additionally, Plaintiff complains about a confrontation he had with Strength. In December 2003, Strength told Plaintiff to unpack boxes of computers slated to be shipped to different schools and to record the serial numbers. Plaintiff told Strength that Dotson (director of logistics before Jacky Todd) had already recorded the serial numbers and Strength responded, "Mr. Dotson doesn't run this department, its (sic) how I want it done." Def.'s Ex. 8 (Memo from Garrison to Todd). Plaintiff walked away to avoid further confrontation and Strength yelled, "Don't you walk away from me." Id. Plaintiff felt that Strength's behavior was unprofessional and degrading.

Finally, Garrison complains that he was publically reprimanded by Jacky Todd, when Todd made a statement to the effect that racial comments would not be tolerated in the department. Garrison claims that such a comment in front of a group was designed to tell him to "stay in his place."

### 4. Complaints to Supervisors and Administrators

While Garrison was at MCBOE, he communicated his complaints about discrimination in the logistics department via letter and memorandum. In August 2003, he sent Jacky Todd a memorandum to complain about what he contends was a reprimand in Todd's office. On December 1, 2003, Garrison sent Jimmy Barker a letter complaining of discrimination and unprofessional conduct in the logistics department, as well as what he believed to be an unfair and discriminatory interview process for the Laborer III job that he applied for and did not

receive.  Finally, on December 11, 2003, Garrison sent Todd a memorandum detailing his

confrontation with Strength concerning the recording of serial numbers on several computers.

## IV. <u>DISCUSSION</u>

**A. Title VII Claims**

    **1.  Individual and Official Capacity Claims**

The law is clearly established in the Eleventh Circuit that "[i]ndividual capacity suits

under Title VII are...inappropriate. The relief granted under Title VII is against the employer; not

individual employees whose actions would constitute a violation of the Act." <u>Busby v. City of</u>

<u>Orlando</u>, 931 F.2d 764, 772 (11th Cir.1991) (per curiam) (citations omitted). "[T]he proper

method for a plaintiff to recover under Title VII is by suing the employer, either by naming the

supervisory employees as agents of the employer or by naming the employer directly." <u>Id.</u>; <u>see</u>

<u>e.g.</u>, <u>Smith v. Capitol City Club of Montgomery</u>, 850 F.Supp. 976, 979 (M.D. Ala.1994)

(Thompson, J.) (finding that the 1991 Amendments to Title VII of the Civil Rights Acts did not

affect the validity of <u>Busby</u> ).  Thus, the significance of <u>Busby</u> is that "even though Congress

defined 'employer' to include 'any agent,' 42 U.S.C.A. § 2000e(b), this provision does not

impose individual liability but only holds the employer accountable for the acts of its individual

agents." <u>Id.</u> at 978.  Summary Judgment is due to be granted as to Garrison's Title VII claims

against Jimmy Barker, Jacky Todd, Mike Casillas and Mike Strength in their individual

capacities as such claims are not cognizable under Title VII.

Likewise, since the employer is a named defendant, official capacity claims against

defendants in their official capacities are due to be dismissed as redundant.  <u>Prescott v.</u>

Independent Life and Acc. Ins. Co., 878 F. Supp. 1545, 1552 (M.D. Ala. 1995) (finding that when employer is named as a defendant in Title VII case it is redundant to also proceed against individual employees in their official capacities).

**2. Timeliness of Plaintiff's Charge of Discrimination with the EEOC**

Defendants contend that Garrison has not satisfied all of the procedural prerequisites to bringing his claims pursuant to Title VII, arguing that his claims about how he was treated during his time at MCBOE, leading up to his termination, are barred because he failed to file a timely charge of discrimination with the EEOC.  Garrison counters that each claim is timely because they fall within the "continuing violation" doctrine as it is applied to hostile work environment cases.  Garrison's argument is that because his EEOC charge was filed within 180 days of his termination, his other claims (framed as hostile work environment claims), though outside of the 180 day limitation period, should also be considered timely.  Garrison's belief that all of his claims are valid as long as his termination falls within the 180 day window  is misplaced.

"It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred."  Pijnenburg v. West Ga. Health Sys., Inc., 255 F.3d 1304, 1305 (11th Cir. 2001);  42 U.S.C. § 2000e-(5)(e)(1) ("A charge under this section shall be filed within one hundred eighty days after the alleged unlawful employment practice occurred....").  If a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is time barred and must be dismissed for failure to exhaust administrative remedies.  Brewer v. Alabama, 111 F. Supp. 2d 1197, 1204 (M.D. Ala. 2000).

The Supreme Court has noted that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). By choosing what is an obviously short deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." Id. Indeed, this procedural rule is not a mere technicality, but an integral part of Congress's statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).

The Supreme Court addressed the operation of Title VII's timely filing requirement in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (the Court considered "whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside [the] statutory time period."). The Court determined that the analysis of whether a claim is timely or not depends on the type of claim at issue. Disparate treatment and retaliation claims, classified as "discrete acts of discrimination or retaliation" are treated differently from claims alleging a hostile working environment. Id. at 105.

In cases involving "discrete acts of discrimination" such as "termination, failure to promote, denial of transfer, or refusal to hire" the timely filing requirement creates an absolute bar to recovery. Id. at 114; Ledbetter v. Goodyear Tire and Rubber Co., Inc., 421 F.3d 1169, 1178 (11th Cir. 2005). The Court's rationale was that such discrete actions are easy to identify and each individual act of discrimination constitutes a separate unlawful employment practice that occurs on the day that it happens. Morgan, 536 U.S. at 109. Thus, when dealing with a discrete act, there is no issue about when the act occurred because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113; Ledbetter,

10

421 F.3d at 1179 (with discrete actions "there is no issue about when, in the language of the statute, the 'alleged unlawful employment practice occurred.'") (quoting 42 U.S.C. § 2000e-5(e)(1).  As a result, if employment actions identified as "discrete discriminatory acts" are time barred, they are not actionable, even if related to acts that were timely filed.[5]  Morgan, 536 U.S. at 114.

The timeliness of a hostile environment charge is approached differently.  The Court reasoned that:

> [h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  The unlawful employment practice therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.  Such claims are based on the cumulative effect of individual acts.

Id. at 115 (internal citations omitted).  Thus, in determining whether a hostile work environment claim has been timely filed, "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  Morgan,  536 U.S. at 117; see also Shields v. Fort James Corp., 305 F. 3d 1280, 1282-83 (11th Cir. 2002) ("[a]n allegation that an employer has allowed a racially hostile work environment to prosper embodies a single violation of an employee's right to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship' and, therefore, should be

---

[5] The Court's holding in Morgan rejected the Ninth Circuit's "serial violations" doctrine which advocated "that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to the act may also be considered for the purposes of liability."  Morgan, 536 U.S. at 114.

reviewed in its entirety if any part of this allegation falls within the statute of limitations period.").  The question lingering therein is what constitutes an act contributing to the claim: "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."  Morgan, 536 U.S. at 120.

"In cases in which there are allegations of both hostile environment and discrete acts of discrimination, courts are to apply the appropriate analysis to each."  Thomas v. Ala. Council on Human Relations, Inc., 248 F.Supp. 2d 1105, 1116 (M.D. Ala. 2003) (Fuller).  Indeed, under the dichotomy created by Morgan, an act must be placed in either the "discrete act" category, or it must be defined as a component act in a hostile work environment claim before a timeliness determination can be made.  See Porter v. Cal. Dep't of Corr., 383 F.3d 1018, 1028 (9th Cir. 2004), amended by 419 F.3d 885 (9th Cir. 2005) ("If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts.").

Garrison filed his original EEOC charge on June 29, 2004, meaning that his 180 day statutory period stretches back to January 1, 2004.  He must show that any alleged discrete acts occurred on or after January 1, 2004 for those acts to be considered by the court as disparate treatment claims.  Regarding his hostile environment claim, he must show that at least one component act that helps make up the claim falls within the statutory period.

Garrison argues that his termination, along with all of the other acts alleged leading up to his termination, are part of one continuing violation.  He reasons that his termination is within the statutory 180 day period (July 2004 well within 180 days), therefore the other acts are also

within the 180 period.  Essentially, Garrison is saying that his entire complaint should be treated as one hostile environment claim, and that his termination is simply a component part of the cumulative violation.  Such an argument ignores the teachings of Morgan.

It is clear that Garrison's termination should be classified as a discrete act, and not as part of a hostile environment claim.  Morgan, 536 U.S. at 114 (termination of employment constitutes a discrete act of discrimination).  As discussed supra, because the two claims are inherently dissimilar, discrete acts are treated and analyzed differently than hostile environment claims.   In a well reasoned opinion, Judge Fuller found that "[a]n untimely discrete act cannot be saved by including it in a lawsuit with a hostile environment claim."  Thomas, 248 F.Supp 2d at 1116.  In this case, the reverse is also true.  An untimely hostile environment claim cannot be saved by trying to connect it to a discrete act that happened to be within the 180 days.  The court finds that for the purposes of Title VII, only Garrison's claim that he was unlawfully terminated is timely filed.  All other claims fell outside of the proper 180 day limitations period[6] and Defendant's motion for Summary Judgment on those claims is due to be granted.

### 3. Termination

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's

---

[6]  Except for his termination, a discrete act, all of the actions that Garrison complains about happened during or before December, 2003.  Although he does not include dates in his complaint, he sent letters or memoranda documenting the alleged wrongs in August 2003 and December 2003, making it clear that these events occurred outside of the limitations period. Therefore, there is no evidence before the court that Garrison was subjected to a racially hostile work environment during the 180 days preceding his termination.  Furthermore, even if the actions complained of were considered, they would not rise to the level required to constitute a legally actionable hostile work environment.

race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a).  The critical element in establishing wrongful race discrimination in violation of Title VII is discriminatory intent.  See St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502 (1993).  Such discriminatory intent can be established through either direct or circumstantial evidence.  See Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989).  Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race under Title VII by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under the McDonnell Douglas analysis, the employee must first establish a prima facie case of discrimination.  Id. at 802.  If the Plaintiff is successful, the burden of production is placed upon the employer to articulate a legitimate non-discriminatory reason for its employment action.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  Once the employer satisfies its burden of production, the employee then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for discrimination.  Burdine, 450 U.S. at 256.  The employee may satisfy this burden either directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of belief.  Burdine, 450 U.S. at 256;  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).  An employee's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may

permit the trier of fact to conclude that the employer unlawfully discriminated against the

employee.[7]  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)

A plaintiff's prima-facie case for a discharge-discrimination claim must show the

following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was

qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and

(4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by

someone who was not a member of the plaintiff's protected class or (b) a similarly situated

employee who was not a member of the protected class engaged in nearly identical conduct and

was not discharged.  Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185

(11th Cir.1984).

The court finds that Garrison is unable to make out a prima facie case that his

employment was terminated on account of his race.  Defendants do not dispute that Garrison is a

member of a protected class, that he was qualified for the position of Laborer I, or that he was

discharged despite his qualifications.  Defendants argue that Garrison's claim must fail because

he is unable to satisfy the fourth requirement of a prima facie case, and the court agrees.

Garrison has provided no evidence from which a reasonable jury could find that he was replaced

by someone outside of his protected class.  In fact, Defendants point out that Garrison was

---

[7] "Although the defendant is entitled to summary judgment in its favor if the plaintiff does not proffer sufficient evidence of pretext, the converse is not necessarily true.  If the plaintiff does proffer sufficient evidence that the defendant's stated reasons are pretextual, the plaintiff still may not be entitled to take his case to a jury."  Chapman v. AI Transport, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000) (en banc).  Indeed, there may "be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  Id.

replaced by Lisa Brown, who is a black female.  Additionally, Garrison has offered no evidence of a similarly situated employee who was not a member of the protected class who engaged in nearly identical conduct but was not discharged.  Rather than articulating the elements of a prima facie case, Garrison merely makes unsubstantiated claims that the Defendants could not justify firing him.  Garrison has failed to establish a prima facie case, and Defendant's Motion for Summary Judgement on this claim is granted.

Even if the court were to assume that Garrison had made out a prima facie case, Summary Judgment for Defendants  would still be appropriate.  Defendants satisfied their burden of production by offering several legitimate, non-discriminatory reasons for terminating Garrison's employment.  See Burdine, 450 U.S. at 254.  Among the reasons were: repeated documented performance evaluations noting an inability to get along with his co-workers, complaints from black and white employees that Garrison was difficult to work with, and a poor attitude towards performing his duties.  Garrison then failed to carry his own burden to supply evidence "sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action."  Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th cir. 2000) (citations omitted). Garrison offered no evidence to refute the legitimate, non-discriminatory reasons offered by Defendants.   Even if all of the actions outside the 180-day time range were considered as background evidence in support of this claim (see Morgan, 536 U.S. at 113), it would not be sufficient for a reasonable jury to conclude that the Defendants' stated reasons for termination were actually a pretext for racial discrimination.

**B.  Section 1983 Claims**

16

Garrison also claims that Defendants violated his (unspecified) constitutional rights as enforced through 42 U.S.C. § 1983.  This claim is inartfully drawn, but construing it in the best possible light for the Plaintiff, the court will consider this to be a claim for denial of Equal Protection.

Although the bulk of Garrison's claims were excluded under Title VII for timeliness reasons, supra, no such timing problem exists under § 1983.   In Alabama, there is a two-year statute of limitations for claims brought under the Equal Protection Clause of the Fourteenth Amendment, as enforced through § 1983.  Lufkin v. McCallum, 956 F.2d 1104 (11th Cir.1992) (noting that proper statute of limitations for § 1983 claim is the forum state's general statute of limitations for personal injury cases and that Alabama's statute of limitations is two years). All of Garrison's claims occurred within two years of his complaint.

Garrison's Title VII and Equal Protection claims, premised on the same facts, both require evidence of intentional discrimination on the basis of race.  "When Section 1983 is used as a parallel remedy for violation of [Title VII], the elements of the two causes of action are the same."  Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation, 49 F.3d 1490, 1508 (11th Cir. 1995) (citing Harden v. Stynchcomb, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982)); Richardson v. Leeds Police Dept., 71 F.3d 801, 805 (11th Cir. 1995) (in cases where § 1983 is employed as a remedy for the same conduct remedied by Title VII, the elements of the two causes of action are the same).   Consequently, the framework traditionally applied to claims of intentional discrimination under Title VII (the McDonnell Douglas-Burdine framework set out above) also applies to Garrison's § 1983 claim for violation of the Equal Protection Clause. See Watkins v. Bowden, 105 F.3d 1344, 1355 (11th Cir.1997) ("The Eleventh Circuit applies

17

Title VII analysis to hostile environment racial harassment and sexual harassment claims brought under the Equal Protection Clause.").

### 1. Official Capacity Claims

Garrison's § 1983 claims are not filed against defendants Barker, Casillas, Todd, and Strength in their individual capacity only.  He has also sued these Defendants and Purcell in their official capacities and sued the MCBOE as an entity. As with Title VII, the court need only consider the § 1983 claim against the MCBOE as an entity. Claims against officers in their official capacity are "functionally equivalent" to claims against the entity that they represent. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir .1991). To retain this suit as one against Purcell, et al., in their official capacities and as one against the MCBOE would be "redundant and possibly confusing to the jury." Id. The court, therefore, dismisses the § 1983 discrimination claims against defendants Purcell, Barker, Casillas, Todd, and Strength in their official capacities. See id. (affirming directed verdict as to official capacity defendants where city remained as defendant); see also Godby v. Montgomery County Bd. of Educ., 996 F.Supp. 1390, 1403 (M.D.Ala.1998) (Albritton, J.) (finding that claims against officers in their official capacities are redundant to claims against the Board).  The court will address the § 1983 claims only as against the MCBOE, and the other Defendants who are sued in their individual capacities.

### 2. Termination and Failure to Promote Claims

Garrison claims that he was terminated because of his race and that this violates his Equal Protection rights.  Garrison's claim that his termination was unconstitutional fails for the same reason his claim that MCBOE violated Title VII failed.[8]

Besides his termination, Garrison also alleges that his constitutional rights were violated when he was not promoted to the position of Laborer III in November, 2003.  In order to establish a prima facie case in a failure to promote claim, Garrison must prove the following four elements: (1) that he belongs to a protected class; (2) that he was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the employer continued to seek applicants or filled the position with a person outside of the plaintiff's protected group.  See Walker v. Mortham, 158 F.3d 1177, 1186 (11th Cir. 1998); Williams v. Ala. Indus. Dev. Training, 146 F. Supp. 2d 1214, 1219 (M.D. Ala. 2001). The first, third, and fourth elements are beyond dispute in this case, as Garrison is a black man who was passed over for the Laborer III position, while Ronnie Causey, a white applicant, was selected.  Defendants are also willing to concede that Plaintiff meets the minimum qualifications for Laborer III, and at the prima facie stage of the case that is all Garrison is required to do.  Burney v. Rheem Mfg. Co., Inc., 196 F.R.D. 659, 670 (M.D. Ala. 2000) ("To establish [his] prima facie case, plaintiff need not show that [he] was the most qualified person for the position—it is sufficient if [he] presents evidence that [he] was minimally qualified.").

Having determined that Garrison met his initial burden of establishing a prima facie case of race discrimination, the burden of production shifts to Defendants to articulate legitimate,

---

[8] Termination claim under Title VII discussed at length, supra, in Section IV(A)(3) of this opinion.

non-discriminatory reasons for the decision not to select Garrison, a Laborer I, for the Laborer III position. See Burdine, 450 U.S. at 254; McDonnell Douglas, 411 U.S. at 802 (defendant's burden is "exceedingly light" and is "one of production, not proof."). Defendants met this burden by producing admissible evidence sufficient for the trier of fact to conclude that Ronnie Causey was the most qualified of the applicants for the job. Defendants point out that Causey was a Laborer II, that the person hired for the Laborer III position would be primarily responsible for working with science kits, and that in his time at MCBOE Causey had worked extensively with the science kits. Because Causey had experience in that area, it made sense to promote him to the Laborer III position.

Accordingly, the burden shifts back to the Plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves, 530 U.S. at 143.

In the materials presented to the court, Garrison does nothing to counter Defendant's proffered reasons. His argument is that he was more qualified than Causey for the position. He initially argues that he had more supervisory experience than Causey, but he submitted no evidence in support of that argument. Garrison also states that he had a "proven ability to work effectively with people," which the court finds ironic, considering that all three of the written evaluations Garrison received at MCBOE indicate a decided inability to work with others. Def's Ex. 11, 12, and 13.

With respect to the relative qualifications of candidates, "evidence showing that an employer hired a less qualified applicant over a plaintiff may be probative of whether the employer's proffered reason for not promoting that plaintiff was pretextual." Lee v. GTE

20

Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000).  The burden is on the  plaintiff to establish that he or she was "substantially more qualified than the person promoted."  Id. at 1255. Substantially more qualified "should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1340 (11th Cir. 2000) (citing Deines v. Tex. Dep't of Protective and Regulatory Servs., 164 F.3d 277, 280 (5th Cir. 1999)); see Damon v. Fleming Supermarkets of Fla, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) (stating that federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").  While Garrison has made an assertion that he was more qualified than Causey, he offers no evidence to back up this claim.  It is well known and long accepted that a plaintiff  "cannot prove pretext by asserting baldly that [he] was better qualified than the person that received the position."  Wilson v. B/E Aeorospace, Inc., 376 F.3d 1079, 1088 (11th Cir. 2004) (citing Alexander v. Fulton Co., Ga., 207 F.3d 1303, 1339 (11th Cir. 2000)).  When dealing with summary judgement, "conclusory allegations without specific supporting facts have no probative value."  U.S. v. Trainor, 376 F.3d 1325, 1334 n.5 (11th Cir. 2004) (quoting Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)).  Garrison's mere argument that he was more qualified than Causey for the Laborer III position fails to show that Defendant's legitimate, non-discriminatory reason for hiring Causey was pretext designed to cover up racial discrimination.

Garrison's additional argument, that the interview was unfair and discriminatory because he was not given sufficient time to prepare, is also without merit. Garrison claims that he was surprised when he arrived at work one morning and he was immediately sent to interview for the Laborer III position. Garrison never states how this procedural issue placed him at a disadvantage as compared to the other applicants, nor does he attempt to refute Defendant's contention that all three applicants were interviewed in precisely the same manner.

Finally, Garrison contends that "his initial hire into the Laborer I position was pretext to prevent him from promotion and other benefits." Pl.'s Complaint ¶ 19. As the court understands it, Garrison believes that he was overqualified to be a Laborer I, and he was at a disadvantage for promotion because Causey was hired as a Laborer II. This argument makes no sense. Garrison voluntarily applied for the position of Laborer I, and it defies logic that he would now argue that getting the job for which he applied was pretext for discrimination.

For the reasons discussed, Summary Judgment on Garrison's claim that his right to Equal Protection was violated when he was not promoted to Laborer III is due to be granted to Defendants.

**3. Hostile Environment**

Garrison argues that he was subjected to "degrading" treatment and harassment during his stay at MCBOE. While the Complaint is very general and does not refer specifically to a hostile work environment claim, Garrison's  remaining complaints are grouped and argued as a hostile environment claim and will be treated accordingly.  Also, it is not at all clear from

22

Plaintiff's brief that he is asserting such a claim under § 1983, in addition to under Title VII, but the court will assume that he is.

The court notes that Garrison has argued that his termination and his failure to be promoted to Laborer III are both separate acts of disparate treatment as well as component parts of his hostile environment claim.  Having already considered these claims individually and finding no merit, the court will not consider them as part of Garrison's separate hostile environment claim.   Although Garrison's hostile environment claim is considered under § 1983 and its more liberal statute of limitations, the court finds that the dichotomy established in Morgan between discrete acts and component acts as part of a hostile environment claim for purposes of determining timeliness is also applicable in defining the type of conduct to be considered as constituting a hostile environment claim.  See Generally  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  Even outside of the Title VII statute of limitations context, the same logic used in Morgan, that hostile environment claims are inherently different from discrete acts and therefore treated differently, still applies.  See Morgan, 536 U.S. at 115.  Morgan clearly identifies both termination and failure to promote as examples of discrete acts and therefore they are not to be considered as component acts in a hostile environment claim.  Morgan, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.").

To establish a hostile environment claim based on racial harassment, Garrison is required to  show that:  (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of

employment and create a discriminatory abusive working environment;  and (5) the employer was responsible for such environment under either a theory of vicarious or direct liability. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir.2002).  Hostile work environment claims involve both a subjective and objective component: "the employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of the employment, and this subjective perception must be objectively reasonable." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir.1999). In analyzing the objective component of these claims, the Supreme Court has held that courts should consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the plaintiff's job performance. See id. at 1276; Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir.1997).  The conduct must be examined in context, not as isolated acts, and the severity and pervasiveness of the conduct must be judged under the totality of the circumstances. Allen, 121 F.3d at 647.  " '[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to "amount to discriminatory changes in the 'terms and conditions of [a person's] employment.' "  Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998) (citation omitted).

Garrison's claims of racial harassment are based on the following events: (1) he "was made to mow grass with a push lawnmower in the middle of the day when the Defendants had a grass mowing crew,"  (2) he was "subjected to racial slurs by Defendant Strength;" (3) he "was made to work in unthinkable unsanitary conditions at Daisy Lawrence;" (p.11, Plaintiff's Brief); and (4) "August 5, 2003, [he] was made to fear for his job when he was threatened by Ronnie

Causey with relation to following his instructions and when his supervisors ushered him into a meeting where he was verbally berated and all but told to 'stay in his place'." (Id., p. 12).

Defendants do not dispute that Garrison is a member of a protected group.   Defendants, however, contend that they are entitled to Summary Judgment on the grounds that Garrison has failed to establish all of the other elements required for a case of racial harassment:  that unwelcome harassment occurred, that any such harassment was based on race, that any such harassment altered the terms and conditions of employment and created a discriminatory abusive working environment, and /or the fifth element, respondeat superior or direct liability.

Garrison's complaints about having to cut grass and pick up trash are without merit. While the court can see how being assigned such activity might be offensive to someone in an administrative position, Garrison was hired as a Laborer I and such activities are clearly within the scope of the job description.  Further, he contends that Causey, a white Laborer II, was never assigned that work but fails to support that with proof other than his own conclusory affidavit. His complaint about one occasion of having to wade through raw sewage to retrieve computers is also without merit.  Admittedly, this seems an unpleasant task, but there is no evidence that it was not the kind of task the logistics department would assign to a Laborer I.  Garrison concedes that he and another worker were provided with boots, gloves  and a jumpsuit to ensure that his clothes did not get ruined and that the sewage was kept off of him.

Garrison argues that less enviable jobs were assigned to black workers, but offers no comparative evidence to back up this claim.

Garrison also cites his confrontation with his supervisor Mike Strength over the recording of serial numbers on computers as an example of harassment.  Based on Garrison's

own deposition, this conflict was based not on race, but Garrison's belief that he should not have to record the serial numbers that he thought had already been recorded.  Garrison Dep. at 111-112.  Garrison's claim that Strength placed his foot up on a stool in the vicinity of Garrison's face, while bad manners, has not been shown to be based on  racial animus.

Garrison also complains that he had to put up with racial slurs while employed at MCBOE.  Garrison claims that Strength used of the term "you all," when referring to a group of black workers and  this was racist and offensive.  Garrison does nothing to show that Strength was doing anything more than trying to get the workers' attention.  Finally, Garrison argues that Strength once referred to a black employee as a "monkey."  The court agrees that such a comment is racist and offensive, but also notes that one racist comment to another person in over two years of employment does not even approach the standard required to create a hostile work environment.  Baker v. Alabama Dept. of Public Safety,  296 F.Supp.2d 1299, 1309 -1310 (M.D.Ala.. 2003) ("[O]ffhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' ") (citing Faragher, 524 U.S. 775, 788 (1998));  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (a hostile work environment is created "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'").

Garrison's allegations in his Brief concerning being threatened by Ronnie Causey in relation to following his instructions and being verbally berated and all but "told to stay in his place," are supported by nothing more than citations to his own affidavit saying that Causey was not his supervisor and he was never assigned to work under Causey.  Garrison also cites a

26

portion of Strength's deposition where Strength actually said that Causey <u>was</u> Garrison's supervisor when Garrison was assigned to his crew.

While Garrison may subjectively have perceived his work environment to be racially abusive, he has produced insufficient evidence from which a reasonable jury could conclude that a reasonable person would find his work environment to be objectively hostile or abusive on teh basis of race.  Examining the totality of the circumstances here, in the light most favorable to Garrison, this court concludes that Garrison cannot establish a cause based on hostile work environment.  His allegations, even if true, fall far short of the type of severe or pervasive conduct that would alter the terms and conditions of his employment, as is required to support a finding of a hostile work environment.[9]

As part of his § 1983 claim, Garrison argues that Defendants Purcell, Barker, Casillas, and Todd were made aware of discrimination in the Logistics Department and failed to take preventative measures to ensure discrimination did not occur.  Based on the court's findings above that Garrison has not shown that he was discriminated against based on his race, there is no need to assess the liability of the named supervisors and administrators.[10]  Additionally,

_____

[9]  This court has interpreted <u>Morgan</u> to exclude discrete acts by the Defendants from inclusion as component parts in Garrison's hostile environment claim.  That said, even if the court factored Garrison's termination and failure to be promoted into his hostile environment claim, it would not be enough to meet his burden of establishing a sufficiently severe and pervasive hostile environment.

[10]  The court does note, and it is uncontested by Garrison,  that the MCBOE did respond to his numerous internal complaints.  For instance, Casillas conducted an investigation of the Logistics Department where he interviewed twenty-two employees (fourteen of them black employees) in an attempt to determine if Garrison's complaints of racism were legitimate.  His investigation revealed that Strength, the primary protagonist in Garrison's complaints, was often rude and abrupt with white and black workers alike, but that he was not seen as someone who racially harassed or discriminated based on race.  His research also found that both black and

because Garrison's evidence would not support a reasonable jury's finding that Defendants violated Garrison's constitutional rights there is no need to discuss the applicability of qualified immunity.  See Campbell v. Sikes, 169 F.3d 1353, 1361-62 (11th Cir. 1999) (holding that in the absence of a constitutional violation there is no need for a district court to address qualified immunity arguments in a summary judgment motion).

**C.  State Law Claim of "Wantonness"**

Garrison's complaint accuses Defendants of "wanton training and supervision." Complaint, ¶ 34.  Garrison does not argue, however, and has presented no evidence of, improper training or a lack of oversight in the department.  "Conclusory allegations without specific supporting facts have no probative value."  Trainor, 376 F.3d at 1334 n.5 (quoting Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)).   Furthermore, nothing submitted by Garrison would support a finding of wantonness by any individuals.  Defendants are entitled to summary judgment as to Garrison's state law claims.

## V. <u>CONCLUSION</u>

For the reasons discussed above, Garrison has failed to sustain his burdens of proof with regard to his Title VII , § 1983, and State tort claims. Therefore, the Defendants' Motion for Summary Judgment (Doc. #11) is hereby ORDERED GRANTED as to all claims.  A separate Judgment will be entered accordingly.

---

white co-workers found Garrison to be difficult to work with, which corroborates what Garrison's written evaluations noted.

Done this 10th day of March 2006.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE